UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES N. McKELVEY,

    Plaintiff,

vs.

PETE GEREN,
Secretary of the United
States Army,

    Defendant.

Case: 5:07-cv-14538
Assigned To: O'Meara, John Corbett
Referral Judge: Majzoub, Mona K
Filed: 10-24-2007 At 09:17 AM
CMP MCKELVEY V GREEN (RRH)

Magistrate Judge

---

PITT, McGEHEE, PALMER,
RIVERS & GOLDEN, P.C.
Joseph A. Golden (P14105)
Kevin M. Carlson (P67704)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
Tel:  (248) 398-9800
Fax:  (248)398-9804
kcarlson@pittlawpc.com
jgolden@pittlawpc.com

FIEGER, FIEGER, KENNEY
& JOHNSON, P.C.
Geoffrey N. Fieger (P30441)
Todd J. Weglarz (P48035)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075-2463
Tel:  (248) 355-5555
Fax:  (248)355-5148

---

**COMPLAINT AND JURY DEMAND**

-1-

## I. INTRODUCTION

This is a case for failure to accommodate, discrimination, and retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* Plaintiff James N. McKelvey is a disabled veteran of the United States Army. In February 2004, while serving with the National Guard in Iraq, Mr. McKelvey was seriously injured when a roadside bomb he was attempting to defuse exploded. As a result of the explosion, Mr. McKelvey lost his dominant right hand, lost substantial function and suffered disfigurement to his left hand, suffered an injury to his eye resulting in double vision (diplopia) and suffered a significant loss of lung capacity.

Mr. McKelvey was medically retired from the United States Armed Forces on December 7, 2005. In February 2006, Mr. McKelvey was hired for the position of Chemical, Biological, Radiological, Nuclear and Explosive (CBRNE) Operations Specialist (GS-11 0301) at the United States Army Garrison–Detroit Arsenal–through a Veterans' Recruitment Act (VRA) Direct Appointment.

Under the Rehabilitation Act, the Army owed Mr. McKelvey a duty to provide reasonable accommodations which would have enabled him to perform the essential functions of his job. However, rather than seeking to reasonably accommodate Mr. McKelvey, his superiors refused to provide him with any accommodations and harassed and ridiculed him because of his disabilities. When Mr. McKelvey complained about this behavior, the harassment worsened. Eventually, Mr. McKelvey was told by Lieutenant Colonel Kevin Austin that if he did not like it, "go find a new job." Shortly after that meeting, LTC Austin ordered Mr. McKelvey to go to the personnel department to find another job. Mr. McKelvey was offered a position as a Security Guard (GS-5), a job he would have been

physically unable to perform. Mr. McKelvey was offered the option of maintaining a job at his current pay grade (GS-11), however, this job would have required Mr. McKelvey and his family to re-locate.

Defendant's actions violated the Rehabilitation Act and left McKelvey with no reasonable prospect of continued employment in the position of CBNRE Operations Specialist. As a result of Defendant's actions, McKelvey was constructively discharged and forced to leave his position on March 3, 2007. Therefore, Plaintiff complains of Defendant as follows:

## II. JURISDICTION, VENUE AND PARTIES

1. This is an action brought by James N. McKelvey ("McKelvey") against his former employer, the United States Army, through the Secretary of the Army, Pete Geren, arising out of a violation of McKelvey's rights under the Rehabilitation Act of 1973, § 501, *et seq.*, 29 U.S.C. § 791, *et seq.*

2. This court has federal question jurisdiction over this matter because Plaintiff's claims arise under federal law, namely, the Rehabilitation Act of 1973.

3. Venue is properly placed in the Eastern District of Michigan, Southern Division because all of the parties are established in this district and all the events in controversy occurred in this district.

4. McKelvey exhausted his administrative remedies as follows:

A. On December 14, 2006, McKelvey presented his complaint to an Equal Employment Opportunity (EEO) Counselor during an initial pre-complaint intake interview;

B. On January 10, 2007, McKelvey presented a complaint of retaliation to an EEO Counselor;

- C. On January 18, 2007, McKelvey participated in a final counseling interview with the Office of Equal Employment Opportunity.

- D. On January 18, 2007, the Office of Equal Employment Opportunity issued a Notice of Right to File a Formal Complaint of Discrimination After Completion of Traditional EEO Counseling.

- E. On February 5, 2007 McKelvey filed a formal complaint of discrimination with the Department of the Army Office of Equal Employment Opportunity (EEO) alleging violations of the Rehabilitation Act arising out of the Army's refusal to accommodate his disability, harassment based on disability which created a hostile work environment, and retaliation. The Agency Docket Number for McKelvey's formal complaint is ARTACOM06DEC04671.

- F. On April 23, 2007, the Office of Equal Employment Opportunity acknowledged receipt of McKelvey's April 4, 2007 request to amend his complaint to further allege that he was constructively discharged from employment with the Army on March 3, 2007.

5. Plaintiff's claims are properly before this Court because more than 180 days have passed since April 4, 2007, when Mr. McKelvey filed his amended complaint with the Office of Equal Employment Opportunity and a final agency action/decision has not yet been issued.

### III. STATEMENT OF FACTS

6. McKelvey began his most recent employment with the Department of the Army on February 6, 2006 as a CBNRE Operations Specialist at the United States Army Garrison–Detroit Arsenal.

7. Prior to his employment as a CBNRE Operations Specialist, McKelvey served in the United States Army from 1990 to 2001 and in the National Guard from 2003 to 2005. McKelvey also worked as a deputy sheriff in Oakland County, Michigan from 2001 to 2005.

8. On February 9, 2004, while serving with the National Guard in Iraq, McKelvey was severely injured when an improvised explosive device he was attempting to defuse

exploded.

9. As a result of the explosion, McKelvey's dominant right-hand was amputated at the wrist, and he suffered severe injuries and impairments to the index, long, ring and little fingers of his non-dominant left hand. In addition, as a result of the explosion, McKelvey suffered a 25% reduction of lung capacity and suffered an injury to his eyes resulting in double vision (diplopia).

10. On November 14, 2005, the Army concluded that McKelvey's medical condition prevented performance of his duties and approved McKelvey's permanent medical disability retirement from the Army.

11. McKelvey is a person with a disability within the meaning of the Rehabilitation Act, in that he has permanent physical impairments which substantially limit one or more major life activities or has a record of such impairments or is regarded as having such impairments.

12. McKelvey's physical impairments are amputation of his right hand, severe disfigurement of his left hand, severe injuries and impairments to the index, long, ring and little fingers of his non-dominant left hand, injury to his eyes resulting in diplopia and significant reduction of lung capacity.

13. Because of these impairments, McKelvey is substantially limited in the major life activities of lifting, performing manual tasks, reaching, breathing, seeing and walking.

14. McKelvey was capable of performing all the essential functions of the position of CBRNE Operations Specialist.

15. During his employment at the Detroit Arsenal, McKelvey was supervised by Alan Parks.

16. Immediately after starting his employment at the Detroit Arsenal in February 2006, and continuing through his employment there, McKelvey was subjected to ongoing discriminatory harassment based solely upon his disability, including:

A. Alan Parks and Maurice "Bud" Spaulding, one of McKelvey's co-workers, referred to McKelvey as "the cripple;"

B. Alan Parks and Maurice "Bud" Spaulding, one of McKelvey's co-workers, commented that McKelvey did not deserve a handicapped parking space and that they would make sure that he lost his parking space;

C. Parks and Spaulding, as members of the "Parking Enhancement Team," demanded that McKelvey turn over his medical records to them to support his use of a handicapped parking placard, which was issued to him by the Michigan Secretary of State office based on his disabilities;

D. Parks told other employees in McKelvey's office that McKelvey was "useless;"

E. Parks commented that he should never have hired McKelvey;

F. Parks commented that McKelvey was "fucked up from the war" and that he had "issues from the war;"

G. McKelvey was excluded from meetings in which he should have participated;

H. McKelvey was excluded from the chain-of-command and the chain-of-communication within his office at the Arsenal;

I. McKelvey was denied work assignments and, despite his requests for work, would be left alone in his office space with nothing to do;

J. As a result of his mistreatment, McKelvey would go entire days at work without speaking to anyone;

K. Parks was routinely short with McKelvey, would not speak to McKelvey, and generally made McKelvey feel unwelcome at his job;

L. Parks forced McKelvey to use a large industrial shredder despite the fact that McKelvey told him he was very uncomfortable with placing his one remaining hand near the machine. After McKelvey expressed his concerns, Parks said "just do it." Parks also sarcastically commented that they should force deaf

people to work on the machine because it was so loud;

M. Parks forced McKelvey to carry large heavy boxes and became infuriated when McKelvey refused to carry them because of the pain it caused;

N. Parks repeatedly refused McKelvey's requests for additional work responsibility and assignments but would provide such responsibility and assignments to Spaulding, even where the assignments were outside of Spaulding's job description;

O. Parks denied McKelvey access to areas of the office to which he needed access, such as the office supply closet;

P. Parks denied McKelvey access codes for the Emergency Operation Center (EOC) despite the fact that part of McKelvey's job responsibility was to work in and manage the EOC;

Q. Parks was dismissive of McKelvey's complaints that he was working overtime hours for which he was not being paid.

17. On several occasions, McKelvey complained to Parks and Spaulding that their comments about his disability and parking placard as well as their actions towards him in general were inappropriate and that he did not want to hear them.

18. Parks and Spaulding ignored McKelvey's complaints and continued making inappropriate comments and treating him differently because of his disability.

19. On at least three occasions during the first eleven months of his employment, McKelvey complained about his work environment to Parks's supervisor Robert Graves, who is the senior civilian employee of the Garrison staff.

20. Graves assured McKelvey that his work environment would improve.

21. Despite Graves's assurances, McKelvey's work situation worsened.

22. During his employment at the Detroit Arsenal, McKelvey requested that his disability be accommodated, but his requests were denied, as follows:

A. Approximately three weeks after taking the job at the Detroit Arsenal,

McKelvey requested a touch screen laptop computer or voice-activation program for his work computer. Approximately two to three weeks later, Parks responded by tossing an outdated catalog onto McKelvey's desk and stating, "You can look through it, but there's no money for that kind of shit."

B.  McKelvey asked Parks if he could install his own voice activation software on the computer. Parks told McKelvey that he could never put a copy of his own programs on a government-owned computer.

C.  McKelvey requested on numerous occasions that the round doorknobs in his office be changed to lever style handles to assist him in opening and closing the doors. These requests were ignored.

23. McKelvey's requests for accommodations were reasonable and would not have imposed any hardships on his employer.

24. On December 14, 2006, McKelvey initiated a discrimination complaint by contacting the Army Equal Employment Opportunity (EEO) Office.

25. After McKelvey filed his EEO Complaint, he received a "satisfactory" score of "3" on his overall performance rating dated January 10, 2007, despite the fact that his actual work performance exceeded the criteria for this rating and warranted a higher rating.

26. At the advice of the EEO Office, McKelvey spoke with Garrison Commander, Lieutenant Colonel Kevin Austin, regarding his work environment. Initially, LTC Austin pretended to not know anything about McKelvey's complaint. However, Austin eventually admitted to knowing about the complaint but stated he knew very little about it.

27. After McKelvey informed LTC Austin of his concerns, Austin ordered McKelvey to visit Jason Bradley at the personnel office to find another job. Austin arranged a meeting for McKelvey at the personnel office for this purpose.

28. During his meeting at the personnel office, McKelvey was informed that he could become a security guard, a job which McKelvey would have been physically unable

to do, for significantly less pay. He was further advised that if he wanted to avoid a pay cut, he would "have to go some place else" to work. The jobs available for McKelvey would have required McKelvey to relocate his family.

29.     Over time, the cumulative effects of the discriminatory harassment and retaliation directed at McKelvey, including actions which were calculated to encourage McKelvey's resignation, made his work environment unbearable, forcing him to resign.

30.     On February 16, 2007, McKelvey provided notice of his resignation effective March 3, 2007.

31.     As a direct and proximate result of Defendant's violation of McKelvey's rights under the Rehabilitation Act, McKelvey has experienced a loss of income and benefits of employment and other economic consequences of his March 3, 2007 constructive discharge; McKelvey has and will continue to experience substantial emotional distress, mental anguish, humiliation, embarrassment and other forms of non-economic damages resulting from his discharge.

## COUNT I
### FAILURE TO ACCOMMODATE

32.     McKelvey incorporates by reference all the above allegations.

33.     McKelvey made reasonable requests for accommodation of his disabilities.

34.     Under the Rehabilitation Act, Defendant owed McKelvey a duty to engage in a meaningful interactive process to determine whether or not he was in need of a reasonable accommodation and to identify the precise limitations resulting from the disability and potential reasonable accommodations.

35.     Notwithstanding McKelvey's request for accommodation and its duties under

the Rehabilitation Act, Defendant, without cause or a showing of undue hardship, failed to accommodate McKelvey's disability by:

    A.    Failing to engage in a meaningful interactive process to determine the need for accommodation and to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations; and

    B.    Refusing to provide McKelvey with the appropriate accommodations.

36. As a result of Defendant's failure to accommodate McKelvey, McKelvey has suffered all the injuries and damages as set forth in paragraph 31 above.

## COUNT II
## DISABILITY DISCRIMINATION
## HOSTILE WORK ENVIRONMENT

37. McKelvey incorporates by reference all the above allegations.

38. Under the Rehabilitation Act, Defendant owed McKelvey a duty to refrain from discriminating against him on the basis of his disability. This duty includes an obligation to maintain a work environment that is free from harassment which alters the terms and conditions of employment.

39. McKelvey was a qualified individual with a disability as that term is defined under the Rehabilitation Act.

40. Throughout his employment with Defendant at the Detroit Arsenal, McKelvey was subjected to acts of discrimination and unwelcome harassment solely by reason of his disabilities, his perceived disabilities, and/or his record of having disabilities.

41. Responsible Arsenal personnel, including but not limited to Parks and Graves, knew or reasonably should have known of the discriminatory actions directed towards McKelvey.

42. Despite their knowledge of the discrimination and harassment that McKelvey was experiencing, responsible Arsenal personnel failed to take any actions to address and/or prevent those actions from continuing.

43. The harassment based on McKelvey's disabilities had the effect of unreasonably interfering with McKelvey's work performance and creating an intimidating, hostile and/or offensive work environment.

44. Defendant is liable for the hostile environment because:

(A) The harassment of McKelvey was carried out in part by a supervisor;

(B) Defendant was on notice of the hostile environment based on McKelvey's complaints;

(C) Defendant knew or should have known of the harassment;

(D) Defendant failed to take prompt, effective remedial action to address the harassment.

45. The conditions of McKelvey's employment were objectively intolerable to a reasonable person and amounted to a constructive discharge.

46. As a direct and proximate result of the unlawful conduct described above, McKelvey has suffered and will continue to suffer all the injuries and damages as alleged in Paragraph 31 above.

## COUNT III
### RETALIATION/INTERFERENCE WITH RIGHTS PROTECTED UNDER THE REHABILITATION ACT

47. Plaintiff incorporates by reference the above allegations.

48. McKelvey requested reasonable accommodations under the Rehabilitation Act.

49. After McKelvey was denied reasonable accommodation and harassed and

discriminated against because of his disabilities, McKelvey complained that his treatment violated his rights under the Rehabilitation Act.

50. Defendant, through Alan Parks and other supervisory personnel at the Detroit Arsenal, isolated McKelvey and attempted to force McKelvey to resign his position or to go work somewhere else in retaliation for McKelvey's pursuing his rights under the Rehabilitation Act.

51. These actions interfered with McKelvey's rights under the Rehabilitation Act.

52. These actions were objectively intolerable to a reasonable person and amounted to a constructive discharge.

53. As a direct result of Defendant's retaliation against McKelvey and an interference with his federally-protected rights under the Rehabilitation Act, McKelvey has suffered and will continue to suffer all of the economic and non-economic losses and injuries described in paragraph 31 above.

### REQUEST FOR RELIEF

Based on the foregoing, McKelvey requests the following relief:

A. An order of the court awarding McKelvey compensatory damages in an amount he is found to be entitled to.

B. An order of the court awarding McKelvey punitive damages because of Defendant's reckless indifference to McKelvey's federally-protected civil rights.

C. An order of the court awarding McKelvey interest, costs and attorney fees.

D.  An order of the court awarding McKelvey such other relief as the court deems just and equitable.

Respectfully Submitted,

/s/ 

PITT, McGEHEE, PALMER
RIVERS & GOLDEN, P.C.
Joseph A. Golden (P14105)
Kevin M. Carlson (P67704)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
Tel:   (248) 398-9800
Fax:  (248)398-9804
kcarlson@pittlawpc.com
jgolden@pittlawpc.com

FIEGER, FIEGER, KENNEY
& JOHNSON, P.C.
Geoffrey N. Fieger (P30441)
Todd J. Weglarz (P48035)
Attorneys for Plaintiff
13390 West Ten Mile Road
Southfield, Michigan 48075-2463
Tel:   (248) 355-5555
Fax:  (248) 355-5148

Dated: October 23, 2007

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES N. McKELVEY,

    Plaintiff,

vs.

PETE GEREN,
Secretary of the United
States Army,

    Defendant.

Case No.

U.S. District Judge

Magistrate Judge

---

PITT, McGEHEE, PALMER,
RIVERS & GOLDEN, P.C.
Joseph A. Golden (P14105)
Kevin M. Carlson (P67704)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
Tel:  (248) 398-9800
Fax:  (248)398-9804
kcarlson@pittlawpc.com
jgolden@pittlawpc.com

FIEGER, FIEGER, KENNEY
& JOHNSON, P.C.
Geoffrey N. Fieger (P30441)
Todd J. Weglarz (P48035)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075-2463
Tel:  (248) 355-5555
Fax:  (248)355-5148

---

**JURY DEMAND**

Plaintiff herein demands a trial by jury of all issues to the within cause of action.

Respectfully Submitted,

*[signature]*

PITT, McGEHEE, PALMER
RIVERS & GOLDEN, P.C.
Joseph A. Golden (P14105)
Kevin M. Carlson (P67704)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
Tel:   (248) 398-9800
Fax:   (248)398-9804
kcarlson@pittlawpc.com
jgolden@pittlawpc.com

FIEGER, FIEGER, KENNEY
& JOHNSON, P.C.
Geoffrey N. Fieger (P30441)
Todd J. Weglarz (P48035)
Attorneys for Plaintiff
13390 West Ten Mile Road
Southfield, Michigan 48075-2463
Tel:   (248) 355-5555
Fax:   (248) 355-5148

Dated: October 23, 2007

| JS 44 11/99 | CIVIL COVER SHEET | COUNTY IN WHICH THIS ACTION AROSE: Macomb |

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

## I. (a) PLAINTIFFS

JAMES N. McKELVEY

**(b)** County of Residence of First Listed: Macomb

Joseph A. Golden (P14105)
Kevin M. Carlson (P67704)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800

Geoffrey N. Fieger (P30441)
Todd J. Weglarz (P48035)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075-2463
(248) 355-5555

## DEFENDANTS

PETE GEREN, Secretary of the United States Army

County of Residence of First Listed: Macomb
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

Case: 5:07-cv-14538
Assigned To: O'Meara, John Corbett
Referral Judge: Majzoub, Mona K
Filed: 10-24-2007 At 09:17 AM
CMP MCKELVEY V GREEN (RRH)

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21: 881 | 28 USC 157 | ☐ 450 Commerce/ICC |
| ☐ 150 Recovery of | ☐ 320 Assault, Libel | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| Overpayment and Enforcement of Judgment | And Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 850 Securities/Commodities/ |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | Exchange |
| ☒ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☒ 442 Employment | | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | Habeas Corpus: | | | |
| ☐ 240 Torts to Land | | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

$ DEMAND

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE   October 23, 2007

SIGNATURE OF ATTORNEY OF RECORD
X _Joseph Golden_

**PURSUANT TO LOCAL RULE 83.11**

1. Is this a case that has been previously dismissed? ☐ Yes ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.) ☐ Yes ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

Notes: