# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: September 18, 2014

Mr. Kevin M. Carlson
Pitt, McGehee, Palmer, Rivers & Golden
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067

Mr. Joseph A. Golden
Burgess & Sharp
43260 Garfield Road, Suite 280
Clinton Township, MI 48038

Ms. Vanessa M. Mays
Ms. Laura Anne Sagolla
U.S. Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226

Re: Case No. 13-2427, *James McKelvey v. Sec'y of US Army*
Originating Case No. : 5:07-cv-14538

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                        Yours very truly,

                                        Deborah S. Hunt, Clerk

                                        Cathryn Lovely
                                        Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0241p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JAMES MCKELVEY,

　　　*Plaintiff-Appellant,*

*v.*

SECRETARY OF UNITED STATES ARMY,

　　　*Defendant-Appellee.*

No. 13-2427

---

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:07-cv-14538—John Corbett O'Meara, District Judge.

Decided and Filed: September 18, 2014

Before: NORRIS, SUTTON and GRIFFIN, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Joseph A. Golden, Kevin M. Carlson, PITT, MCGEHEE, PALMER, RIVERS & GOLDEN, P.C., Royal Oak, Michigan, Joseph A. Golden, BURGESS & SHARP, PLLC, Clinton Township, Michigan, for Appellant. Laura Anne Sagolla, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

---

**OPINION**

---

　　　SUTTON, Circuit Judge. After suffering severe wounds while serving in Iraq, James McKelvey did not receive the welcome home he deserved. He obtained a civilian job with the Army, but he faced relentless harassment at work based on his war injuries, leaving him no choice but to quit. McKelvey sued the Army for disability discrimination, and a jury awarded him millions in front pay. On appeal, this court held that the relevant statute entitled him only to

1

No. 13-2427         *McKelvey v. Sec'y of United States Army*         Page 2

reinstatement. On remand, McKelvey and the Army settled. The district court granted McKelvey's motion for attorney's fees, discounting the amount by half because (among other reasons) he had rejected a more favorable settlement offer before trial. Because we conclude the district court did not abuse its discretion in making the fee award, we affirm.

I.

McKelvey served our nation bravely in Iraq. In February 2004, he attempted to defuse a roadside bomb, and it exploded. He lost his right hand from the explosion, among other injuries. Two years later, McKelvey moved back to Michigan and accepted a civilian position with the Army as an operations specialist. At the new job, he received only menial assignments and was constantly taunted by colleagues, often (remarkably for an Army post) about his war-related injuries. He eventually reached the breaking point and resigned in 2007.

McKelvey sued the Secretary of the Army for disability discrimination in violation of the Rehabilitation Act of 1973. *See* 29 U.S.C. § 791 *et seq.* The Army offered to reinstate him in a new position at a new location that was otherwise equivalent to his old job. A few days later, the Army sweetened the pot by offering $300,000 to settle the whole dispute. Negotiations followed. But a settlement did not. McKelvey wanted $2.2 million, well beyond the Army's settlement range, and he rejected both offers as a result. Two of his claims, hostile work environment and constructive discharge, went to trial. The jury ruled in his favor, awarding him nearly $4.4 million in front pay. The district court vacated that award, however, and we affirmed in part, precluding front pay and holding that reinstatement was the proper remedy under the statute. *See McKelvey v. Sec'y of U.S. Army*, 450 F. App'x 532, 536–37 (6th Cir. 2011). One year after the remand, McKelvey and the Army settled. Many details of the settlement remain unclear, but the parties agree that the deal included a $60,000 payment to McKelvey.

The district court awarded attorney's fees to McKelvey as a prevailing party. *See* 29 U.S.C. § 794a(b). Multiplying the billable hours by a reasonable hourly rate for each attorney, the court calculated the benchmark fee award, commonly known as the lodestar, at approximately $244,000. The court cut that award in half because, among other reasons, McKelvey incurred most of his fees after "reject[ing] a more favorable settlement offer prior to trial (unconditional reinstatement and $300,000) than he received after the conclusion of the case

(reinstatement and about $60,000 in back pay)." R. 127 at 6. The district court found unreasonable McKelvey's demand for millions in front pay and his rejection of a reinstatement remedy.

II.

Under the Rehabilitation Act, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a(b). The operative words are "the court" (the trial court, that is), "may," and "in its discretion," all of which require the courts of appeals to give deferential review to such awards and to be mindful of the trial court's ring-side view of the proceedings. "[R]ough justice," not mathematical precision, tells us what we generally need to know about reviewing such awards. *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

McKelvey maintains that the district court abused its discretion by proportionally reducing the award based on the lack of success of some of his claims. Yet this mischaracterizes the court's analysis. It disavowed reducing the fee award based on the percentage of unsuccessful claims, noting that McKelvey's success on his constructive discharge claim was not trivial. This discounting of the lodestar was not unduly mechanical and not otherwise beyond the bounds of a reasonable assessment of a fee request.

McKelvey separately maintains that the court erred in reducing the lodestar amount by fifty percent based on his rejection of a $300,000 settlement offer. Yet there is nothing about a rejected settlement offer that removes it from the broad constellation of factors a trial court may consider in exercising the statute's "in its discretion" judgment about whether to award fees and, if so, in what amount. "[T]he most critical factor" to a reasonable fee "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). And "the amount of damages awarded as compared to the amount sought" in a damages claim is one way to think about the degree of success. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted). Few, if any, reasonable litigants would call a monetary judgment that comes in well under the money offered to settle the case a success. And many courts applying various fee-shifting statutes have measured success in part on this basis. *See Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) (holding that a prior settlement offer more favorable than the final

judgment bears on the plaintiff's degree of success); *Lohman v. Duryea Borough*, 574 F.3d 163, 167–69 (3d Cir. 2009) (same); *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) (same); *Dalal v. Alliant Techsystems, Inc.*, 182 F.3d 757, 761–62 (10th Cir. 1999) (same); *Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1337 (4th Cir. 1996) (same); *Haworth v. Nevada*, 56 F.3d 1048, 1052 (9th Cir. 1995) (same).

In such settings, the work performed, and the fees incurred, after a spurned offer do not provide meaningful value to a prevailing party or for that matter to society in general. "After all, refusing a reasonable offer of settlement promotes few public interests when the plaintiff ultimately receives a less favorable recovery after trial." *Sheppard*, 88 F.3d at 1337; *see Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 409 (3d Cir. 2013).

True though all of this may be, we do not wish to oversell the point. Hindsight has a way of making things look clearer at the point of decision—the time of declining to settle a case—than they may have been. Just because a plaintiff ends up with less than what was offered during settlement negotiations does not mean fees should be reduced. The critical point is that this potential measure of lack of success is one factor among many that a district court may consider in exercising the discretion the statute gives it. Circumstances differ from case to case. Sometimes, a spurned offer might warrant a reduction. Other times, it might not. All we say today is that district courts are not barred from considering the point.

What of Civil Rule 68, McKelvey asks? Don't the detailed provisions in the Rule for shifting costs (and sometimes fees) after a rejected offer of settlement preclude district courts from considering settlement offers in applying fee-shifting statutes? Here is what Rule 68, captioned Offer of Judgment, says in pertinent part:

> At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms . . . . If the judgment that the offeree finally obtains is not more favorable than [an] unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68. Rule 68 also applies to fee-shifting statutes that define fees as part of costs. If, for example, the "statute defines 'costs' to include attorney's fees, . . . such fees are to be included as costs for purposes of Rule 68." *Marek v. Chesny*, 473 U.S. 1, 10 (1985). Section 794a(b) is one such statute: It permits "a reasonable attorney's fee as part of the costs."

No. 13-2427          *McKelvey v. Sec'y of United States Army*          Page 5

29 U.S.C. § 794a(b).  Reasoning that Rule 68 already contains a formalized mechanism for incentivizing plaintiffs to accept offers of judgment, McKelvey argues that the Rule prohibits trial judges from otherwise accounting for settlement offers in making a fee award.  We think not.

In the first place, there is no conflict between the Rule and the statute.  Rule 68 *requires* fee reductions in some settings after a formal offer of judgment; the fee statute *permits* fee reductions for all manner of reasons, including if a prevailing party could have won more had he settled the case.  The one is automatic; the other turns on discretion.  The fee statute still leaves considerable work for Rule 68 to do.

The district court also did not apply this fee reduction in a way that makes Rule 68 superfluous.  Instead of denying *all* fees incurred after McKelvey rejected the $300,000 offer, the court did something different.  Rule 68 would have required the district court to impose a three-quarters reduction on the fee request.  Yet the court imposed a fifty-percent reduction.  The district court thus did not sidestep the formalities of Rule 68 and impose the same (or even a similar) deduction based on the statute.  Rather, as the record confirms, the prior settlement offer was one factor among many considered by the court in exercising its discretion to set a reasonable attorney's fee.

In the second place, the language of Rule 68 does not purport to occupy the field of cost and fee reductions.  Rule 68 tells us nothing—either way—about whether spurned settlement offers, combined with other factors, warrant a fee reduction, or whether a less-than-complete discount might be appropriate.  The norm is that "matters left unaddressed" in a statute or rule "are presumably left subject to" another law.  *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994).  Rule 68, to be sure, uses a combination of carrots and sticks to encourage settlement and deter wasteful litigation.  And reductions to the lodestar based on prior settlement offers have a similar effect.  But that overlapping function alone does not divest district courts of discretion to consider those offers when setting a reasonable attorney's fee under § 794a(b) and other similar fee-shifting statutes that treat fees as part of costs.

Civil Rule 54 illustrates the point.  It says that "costs . . . should be allowed to the prevailing party," Fed. R. Civ. P. 54(d), and it lays out timetables for seeking costs and

attorney's fees. If a defendant makes an offer of judgment that complies with Rule 68, and if the award obtained by the plaintiff is less than the offer of judgment, Rule 68 requires the plaintiff to pay the defendant's costs. In the absence of these two conditions, however, we look to Rule 54 and any relevant statutes to impose costs and fees. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012) (noting that courts applying Rule 54(d) should respect "the ordinary meaning of the various items enumerated in the costs statute"). Under that Rule, a prior settlement offer may warrant a reduced award because unnecessarily prolonging litigation and the prevailing party's degree of success are relevant there as well. *See White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). As the Supreme Court has said: "[A] defendant could use a reasonable settlement offer as a means of influencing the judge's discretion to award costs under Rule 54(d)." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 356 n.16 (1981); *see also United States ex rel. Wadeford Elec. Co. v. E.J. Biggs Constr. Co.*, 116 F.2d 768, 775 (7th Cir. 1940). So it is with the relationship between Rule 68 and fee-shifting statutes like § 794a(b) and § 1988. When the conditions of Rule 68 have been satisfied, the Rule controls. Otherwise, the normal rules for awarding fees apply, including the discretionary authority of the district court to award fees and to consider a wide range of factors in doing so.

*Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166 (2013), made a similar point about the interaction between Rule 54(d)(1) and an overlapping costs statute. The Fair Debt Collection Practices Act permits an award of costs when an action is "brought in bad faith and for the purpose of harassment." 15 U.S.C. § 1692k(a)(3). To the plaintiff's way of thinking, that meant that costs could not be awarded under Rule 54 in FDCPA cases in the absence of bad faith. *Marx*, 133 S. Ct. at 1173–78. Not so, the Court held. The FDCPA "is silent where bad faith and purpose[ful] harassment are absent," the Court reasoned, "and silence does not displace the background rule that a court has discretion to award costs." *Id.* at 1174; *see* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2670 (3d ed. 1998) (explaining that "permissive" statutes do not remove discretion under Rule 54). So also here: Rule 68 is silent about what happens when its prerequisites are not met, leaving in place the background assumption that the normal fee-shifting rules apply, including the possibility that a district court may factor into a fee award an unreasonably rejected settlement offer.

The language of Rule 68 offers other indications that it does not remove spurned settlement offers from the conversation about attorney's fees whenever a defendant opts not to invoke the Rule. Rule 68 applies to offers of judgment, not settlement offers. They are not the same. Settlement offers generally lead to dismissals, not entries of judgment. 12 Wright & Miller, *supra*, § 3002. The latter are enforceable by the court; the former are not. *Id.* Settlement offers often will address all manner of collateral issues—releases and waivers, releases to third parties, new terms for doing business together, etc.—not suitable for an offer of judgment. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754 (4th Cir. 2011). Rule 68 does not apply to such settlement offers. Yet the court's discretionary authority to determine the defendant's measure of success may still warrant a fee reduction when a comparison between the benchmark of a settlement offer and the award makes that appropriate. Think about the defendant who makes a settlement offer on the day of trial as opposed to fourteen days before trial. Rule 68 would not apply given the failure to meet the fourteen-day requirement. But if the defendant offers the plaintiff everything he seeks, the plaintiff rejects the offer, and receives only nominal damages at the trial, shouldn't the court be able to consider that settlement offer in deciding whether to grant fees incurred in the trial and, if so, in what amount? We think so.

What of the situation in which the statute defines fees separately from costs? *See, e.g.*, 42 U.S.C. § 3613(c)(2) (authorizing courts to award "a reasonable attorney's fee and costs" to prevailing parties under the Fair Housing Act); 29 U.S.C. § 216(b) (permitting "a reasonable attorney's fee . . . and costs of the action" under the Fair Labor Standards Act). In this setting, *Marek* tells us that Rule 68 does not apply to attorney's fees. *McCain v. Detroit II Auto Fin. Ctr.*, 378 F.3d 561, 563 (6th Cir. 2004). Surely in that setting, then, the district court may consider spurned settlement offers in deciding whether to award fees. It makes little sense to give district courts authority to consider settlement offers in the one setting but not the other.

Nor was the fifty-percent reduction to the lodestar an abuse of discretion. The reduction falls well within the range of reason, especially considering that the prior cash settlement offer was *five times* what McKelvey ultimately received in back pay, and that three-quarters of his attorney's fees accrued *after* he rejected that offer. *See Lohman*, 574 F.3d at 169 (holding that rejection of a settlement offer six times the jury award was probative of the plaintiff's lack of

success). The disparity between the offer and ultimate judgment was reasonably accounted for, and that is true even when one accounts for the fact that part of the settlement covered fees incurred to date.

We are not the first court to consider the interaction of Rule 68 and fee-shifting statutes. The Third Circuit has taken a similar route. In *Lohman*, the district court reduced the lodestar by about half in part because the plaintiff rejected a settlement offer much larger than the ultimate damage award. *Id.* at 166. The plaintiff on appeal raised the same Rule 68 objection that McKelvey does. In turning the argument aside, the Court of Appeals reasoned that Rule 68 creates a "formal process" designed to encourage settlement by allowing defendants to limit their litigation costs. *Id.* at 168. The Rule says nothing at all, the Court held, about determining the plaintiff's degree of success, which is one measure of an appropriate fee: "[W]e fail to see how the existence of this Rule and availability of this strategic mechanism for limiting one's costs should preclude a district court from considering informal negotiations for the unrelated purpose of determining the extent of relief sought by a plaintiff." *Id.* We agree.

Some circuit courts, to be sure, have expressed skepticism of fee reductions based on informal settlement offers. *See Diaz v. Jiten Hotel Mgmt., Inc.*, 704 F.3d 150, 154 (1st Cir. 2012); *Clark v. Sims*, 28 F.3d 420, 424 (4th Cir. 1994); *Ortiz v. Regan*, 980 F.2d 138, 140–41 (2d Cir. 1992). We share their concerns. Such discounts should not be applied lightly or applied mechanically. On top of this substantive reason for rejecting settlement-offer fee reductions, some circuits have suggested that Rule 68 implicitly occupies the field, largely banning the consideration of prior settlement offers (with a possible exception when there is evidence of the plaintiff's bad faith). *See Diaz*, 704 F.3d at 154; *Clark*, 28 F.3d at 423–24; *Ortiz*, 980 F.2d at 141; *Cooper v. Utah*, 894 F.2d 1169, 1172 (10th Cir. 1990). In each of these pre-*Marx* cases, however, this additional ground for the court's decision amounted to dicta, and the courts' brief analyses did not consider the differences between the Rule's mandatory procedures on the one hand and the discretionary mix of factors relevant to the fee-shifting statutes on the other.

We need not confront the separate and more difficult question of whether trial courts outside Rule 68 may rely on a prior settlement offer to deny all costs incurred after the offer (as the Rule would require). Perhaps Rule 68 precludes *that* type of reduction to the lodestar. *See*

*Diaz*, 704 F.3d at 154 & n.2 (rejecting such a reduction); *Berkla v. Corel Corp.*, 302 F.3d 909, 922 (9th Cir. 2002) (same); *Clark*, 28 F.3d at 423 (same); *Ortiz*, 980 F.2d 140–41 (same). But that question is for another panel and for another day.

McKelvey separately objects that the district court misapprehended the facts. The court erred, he says, when it concluded that the Army's pretrial settlement offer included both $300,000 *and* reinstatement, as opposed to merely the money. When the original money offer is compared to what McKelvey won—$60,000 *plus* reinstatement—the initial settlement proposal looks worse, the argument continues, because reinstatement is quite valuable (as the jury's $4.4 million front-pay verdict suggests). So the whole basis of the district court's lodestar reduction, the argument ends, is wrong.

We disagree. For present purposes, we assume that the final settlement included reinstatement, as the district court found. The Army disputes that finding, claiming that McKelvey passed on reinstatement, accepting the $60,000 *instead*. But even assuming the parties' agreement included reinstatement on top of the money, the evidence supports the district court's bottom line that McKelvey rejected a much better settlement offer before trial. The record permits the inference, contrary to McKelvey's claim, that he initially turned down the opportunity to walk away with both $300,000 *and* reinstatement (not merely one or the other). Both benefits, to be sure, may have come in separate offers, but that is of no moment. The Army first unconditionally offered to reinstate McKelvey at an equivalent job, explicitly noting that acceptance of this offer did *not* require him to waive his outstanding claims. Then, while the window to accept this reinstatement offer was still open, the Army separately offered him $300,000 to resolve all claims. Nothing in this second offer makes it mutually exclusive with the prior reinstatement offer. Indeed, the timing of the two offers and unconditional nature of the initial offer suggest the opposite. Maybe the two offers were alternatives; maybe not. The critical point is that the evidence permits us to credit the district court's findings that they were not alternatives.

For these reasons, we affirm the fee award.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 13-2427

JAMES MCKELVEY,

        Plaintiff - Appellant,

    v.

SECRETARY OF UNITED STATES
ARMY,

        Defendant - Appellee.

>  **FILED**
>  *Sep 18, 2014*
>  DEBORAH S. HUNT, Clerk

Before: NORRIS, SUTTON and GRIFFIN, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk